UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TORIN ASSOCIATES, INC., d/b/a MEDICAL
MANAGEMENT SOLUTIONS,

                        Plaintiff,

    -against-

MATTHEW FLORENCE PEREZ and ALFRED
CHRISTIAN DUFFY,

                        Defendants.

OPINION & ORDER

No. 15 Civ. 8043 (NSR)

NELSON S. ROMÁN, United States District Judge

    Plaintiff Torin Associates, Inc. ("Torin"), a New York corporation, brought this action against Defendants Matthew Florence Perez and Alfred Christian Duffy in state court pursuant to New York's expedited, pre-discovery procedure for resolving debt disputes via summary judgment in lieu of a complaint. N.Y. C.P.L.R. § 3213. Defendants, both from Arizona, removed to federal court on the basis of diversity jurisdiction, and the parties re-briefed the motion for summary judgment now pending before this Court pursuant to Fed. R. Civ. P. 56(c) and Local Rule 56.1. For the following reasons, Plaintiff's motion is GRANTED.

## BACKGROUND

    The following facts are taken from the record before the Court, including the parties' respective submissions, declarations, affidavits, and exhibits, which remain largely undisputed. (*Compare* Pl. Statement of Material Facts Not in Dispute ("Pl. 56.1") (ECF No. 16), *with* Defs. Response to Pl. 56.1 ("Defs. 56.1") (ECF No. 21).)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11 | 10 | 2016

## I.      Factual Background[1]

On September 12, 2014, Plaintiff loaned $200,000 to AllianceMed, LLC and $150,000 to Gryphon Biosurgical, LLC.  (Pl. 56.1 ¶¶ 1, 5; Perez Decl. ¶¶ 2-3.)  Defendants Perez and Duffy are members of AllianceMed (Perez Decl. ¶¶ 2, 4), and at the time these loans were made had membership interests in Gryphon, though they may have divested themselves of such interests at this point (*id.* ¶¶ 3-4; Defs. 56.1 ¶ 6).  Sally Torin is president of Plaintiff Torin and negotiated the terms of the loans with Defendants.  (Perez Decl. ¶¶ 3, 5.)  The terms of the $200,000 loan were reflected in a promissory note executed by Perez on behalf of AllianceMed indicating the simple interest per annum was five percent and the note matured on September 12, 2015.  (*Id.* ¶ 2; Torin Reply Aff., Ex. 3 (copy of executed note) ("Alliance Note").)  That loan was repaid in full with interest as of September 10, 2015.  (Torin Reply Aff. ¶ 16; Perez Decl. ¶¶ 2, 14.)

The terms of the $150,000 loan were allegedly identical and reflected in a promissory note also maturing on September 12, 2015—Defendants dispute whether the promissory note was ever executed.  (*Compare* Pl. 56.1 ¶¶ 1, 7, *with* Defs. 56.1 ¶¶ 1-4 (promissory note "was never executed"), ¶¶ 7-15 (same); Perez Decl. ¶ 3 (same).)  In responsive briefing on this motion, Torin concedes that the note was likely not signed by Perez on behalf of Gryphon, because she failed to send the note to Defendants when the other promissory note, and additional agreements, were sent to be executed.  (Torin Reply Aff. ¶¶ 7-9, Ex. 2 (copy of unsigned note) ("Gryphon Note").)  The $150,000 loan made to Gryphon is in default.  (Pl. 56.1 ¶¶ 3, 13.)

At the time that these two loans were made, Defendants provided Plaintiff Torin with

---

[1] Plaintiff Torin, in support of this motion, provides two affidavits made by Sally Torin, president of Torin, attaching certain of the agreements at issue.  (Aff. Sally Torin in Supp. Pl. Mot. Summ. J. ("Torin Aff."), ECF No. 14; Reply Aff. Sally Torin in Further Supp. Pl. Mot. Summ. J. ("Torin Reply Aff."), ECF No. 24; *see also* Notice of Removal (Exs. A & B), ECF No. 1.)  In opposition, Defendants provide a declaration from Defendant Perez.  (Decl. Matthew Florence Perez dated Mar. 16, 2016 ("Perez Decl."), ECF No. 23.)

security interests in their Gryphon and AllianceMed holdings, with respect to the loans provided to the two companies, through a pledge agreement.  (Perez Decl. ¶ 4; Torin Aff. ¶ 13; Torin Reply Aff. ¶¶13, 15.)  They also provided Torin with a written guarantee of payment for both of the loans.  (Torin Aff., Ex. A, Agreement and Guarantee Concerning Loans ("Guarantee"); Pl. 56.1 ¶ 2; Perez Decl. ¶ 4 (agreeing that Defendants signed the guarantee "whereby [they] both agreed to personally guaranty the repayment of the loans").)

By the terms of the Guarantee, Torin made the loans to AllianceMed and Gryphon "only upon the condition" of receiving the guarantee by Perez and Duffy "of [the] [companies'] payment of the [l]oans and performance under the Loan Documents," defined as the individual promissory notes, the Guarantee itself, and the pledge agreement.  (Guarantee at 1.)  In consideration of the loans made to the companies, Defendants agreed to "*unconditionally and absolutely*" guarantee the:

> punctual payment when due of *any and all existing and future* indebtedness and liability of every kind, nature, and character (including all promissory notes [] and all renewals, extensions, and modifications thereof) from [the companies] to [Plaintiff] however created or arising or evidenced or acquired, *regardless of whether recovery* on such indebtedness or liability may be or hereafter *become[s] barred by any statute of limitations or* such indebtedness or liability *may otherwise be or become unenforceable*; and agree that this Guarantee shall be deemed *a continuing guarantee* of the [l]oans from [Plaintiff] to [the companies] and of all expenses incurred by [Plaintiff] in connection therewith.

(*Id.* at ¶ 3 (emphasis added).)

Defendants made the same unconditional and absolute guarantee to "the due and punctual payment of the principal of the [n]otes, the interest thereon, and any other monies due or which may become due thereon[.]"  (*Id.* at ¶ 4.)  This included "the due and punctual performance and observance by [the companies] of *all of the other terms, covenants, and conditions of the Loan Documents*, whether according to the present terms" or any change in terms that came to pass.

3

(*Id.* (emphasis added))  Defendants similarly waived, among other things, "diligence, presentment, protest, notice of dishonor . . . and notices of every kind," and consented to "any and all changes in terms, covenants, and conditions" of "the Loan Documents[.]"  (*Id.* at ¶ 5.)

Defendants also agreed to each "remain liable *as a principal* until the full amounts of all sums payable under the [n]otes *and the Loan Documents* shall have been performed and observed by [the companies], notwithstanding any act, omission, or thing which might otherwise operate as a legal or equitable discharge of [Defendants.]"  (*Id.* (emphasis added))  They also agreed that their "obligations" under the agreement were "irrevocable" and "independent of the obligations of the [companies.]"  (*Id.* at ¶ 8.)  And, in the event that Plaintiff "retain[ed] or engage[d] an attorney [] to enforce [the] Guarantee," Defendants agreed to "reimburse [Plaintiff] for all expenses incurred, including attorneys' fees and disbursements."  (*Id.* at ¶ 9.)

Plaintiff Torin asserts it demanded that Defendants satisfy the amount due on the loan pursuant to the Guarantee, but Defendants have not done so.  (Pl. 56.1 ¶¶ 4, 14.)

## II.    Procedural History

Plaintiff filed this action in state court pursuant to N.Y. C.P.L.R. § 3213 seeking payment of the defaulted loan, as well as interest and all costs, including attorneys' fees.  Defendants removed the action to federal court.  (Notice of Removal, ECF No. 1.)[2]  The parties were provided the opportunity to brief the motion for summary judgment, now pending before the Court, under the Federal Rules.  (ECF No. 5.)[3]

---

[2] The Court's jurisdiction under 28 U.S.C. § 1332 is undisputed.  The amount in controversy is at least $150,000, and the parties are diverse.  (*See* Notice of Removal at ¶¶2-5; Torin Aff. ¶ 3.)

[3] Federal rules of procedure apply to actions in federal court.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 111-12 (2d Cir. 2013); *Com/Tech Commc'n Tech., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 150-51 (2d Cir. 1998) (the Federal Rules govern the summary judgment procedure for a C.P.L.R. § 3213 action removed to federal court); *see also ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, --- F. App'x ----, No. 15-3387, 2016 WL 5386293, at *2 (2d Cir. Sept. 26, 2016) (post-removal the action can continue without discovery).

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence [in] support" of such a contention.  Fed. R. Civ. P. 56(c)(1)(B).

If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summ. order).  Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted).  In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.  *Anderson*, 477 U.S. at 249.  Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).  The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).  Moreover, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Civ. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

## DISCUSSION

New York C.P.L.R. § 3213 provides for an expedited resolution of "an action [] based upon an instrument for the payment of money only or upon any judgment," allowing a plaintiff to initiate such an action by filing a motion for summary judgment on the pleadings along with the relevant instruments and proof of default.  *See Channel Excavators, Inc. v. Amato Trucking Corp.*, 48 Misc. 2d 429, 430 (Sup. Ct., Special Term, Nassau Cty. 1965) ("the section was designed 'to provide a speedy and effective means of securing a judgment on claims presumptively meritorious' where a formal complaint would be superfluous and it would be desirable to avoid delay").  New York law is clear that under § 3213 an unconditional guarantee is "an instrument for the payment of money only." *Cooperatieve Centrale Raiffeisen-*

*Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 492 (2015) (citing *Manufacturers Hanover Trust Co. v. Green*, 95 A.D.2d 737, 737 (1st Dep't 1983));[4] *see, e.g., Poah One Acquisition Holdings V Ltd. v. Armenta*, 96 A.D.3d 560, 560 (1st Dep't 2012) (plaintiff entitled to summary judgment based on "the absolute and unconditional guaranty" that was "executed by [defendant] and an affidavit of nonpayment"); *Rhodia, Inc. v. Steel*, 32 A.D.2d 753, 753 (1st Dep't 1969) (unconditional guarantee of a promissory note).  "To come within the section the instrument need not be a negotiable instrument," but "the determination of the action [sh]ould [not] depend upon proof of facts outside the instrument itself."  *Channel Excavators*, 48 Misc. 2d at 430; *see Suozzi v. Scharf*, 115 A.D.3d 933, 934 (2d Dep't 2014) (guarantees of a "conditional nature" require "extrinsic proof" to determine their enforceability and are therefore not within § 3213).

Thus, Plaintiff's *prima facie* case upon an unconditional guarantee requires proof of "the existence of the guaranty, the underlying debt[,] and the guarantor's failure to perform under the guaranty."  *Cooperatieve Centrale*, 25 N.Y.3d at 492.  To prevail on its motion for summary judgment, Plaintiff must demonstrate that there are no genuine disputes surrounding any of the facts that are material to these three requirements.  *See, e.g., Inland Mortg. Capital Corp. v. Realty Equities NM, LLC*, 71 A.D.3d 1089, 1090 (2d Dep't 2010).  In support, Plaintiff has submitted copies of the executed Guarantee and an unexecuted Gryphon Note for the loan, along

---

[4] "A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits." *McPhee v. Gen. Elec. Int'l, Inc.*, 736 F. Supp. 2d 676, 679 (S.D.N.Y. 2010), *aff'd*, 426 F. App'x 33 (2d Cir. 2011); *Aramarine Brokerage, Inc. v. OneBeacon Ins. Co.*, 307 F. App'x 562, 564 (2d Cir. 2009) (summ. order) ("a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction"). The Guarantee provides that "the laws of New York (but not including the choice of law rules thereof)" apply to "any claims or disputes" relating to "the rights and obligations of the parties" under the agreement.  (Guarantee at ¶ 13.)  The parties do not dispute that New York law applies, and "choice of law clauses in contracts and loan documents are generally honored in New York." *Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 399 (S.D.N.Y. 2000).  Plaintiff Torin, a New York corporation, brought the action in New York pursuant to the executed Guarantee between the parties, which selected New York as the forum for any disputes under the Guarantee and provided New York law would govern such disputes.  These circumstances combined with Torin's ostensible negotiation of the contract from New York provide "sufficient contacts" to apply New York law.

with an affidavit outlining the transaction and default by both Gryphon and the guarantors, Defendants.[5]  Defendants contend that summary judgment is inappropriate because the note is unexecuted, *i.e.* more proof is needed to satisfy the prerequisites of C.P.L.R. § 3213.  But, the terms of the Guarantee dispose of their defense as a matter of law and provide the proof required.

## I.      The Guarantee Executed by Defendants

"Under New York law, guaranties are governed by the rules of contracts."  *Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 400 (S.D.N.Y. 2000) ("A valid guaranty must be a written instrument guaranteeing payment of another's debt, describing with precision the obligation to which the person is bound.  Consideration for the guaranty must be expressly or impliedly stated in the instrument, [which] must be delivered to, and accepted by, the guarantor.") (internal citations omitted).  Like any contract, a guarantee that "is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Cooperatieve Centrale*, 25 N.Y.3d at 493.[6]  "Summary judgment is appropriate on a contract claim under New York law where 'the intent of the parties can be determined from the face of the agreement.'"  *HSH Nordbank AG N.Y. Branch v. Street*, 421 F. App'x 70, 72 (2d Cir. 2011) (summ. order) (quoting *Katel Ltd. Liab. Co. v. AT&T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010)).

There are no genuine disputes as to the Guarantee of the loan: Defendants do not dispute the existence or validity of the Guarantee, nor whether it is unconditional.  The Guarantee was

---

[5] Defendants do not dispute the veracity of these agreements or the terms therein.  *Cavendish Traders*, 117 F. Supp. 2d at 399 n.8 ("Copies of promissory notes and guaranties are admissible under the best evidence rule, where, as here, the existence of the original writings and the authenticity and accuracy of the copies are not disputed."); Fed. R. Evid. 1003 (admissibility of duplicates); *see also New York Higher Educ. Services Corp. v. Ortiz*, 104 A.D.2d 684, 684-85 (3d Dep't 1984) (summary judgment granted upon "copies of the original notes which indicated that the originals had been executed by defendant" in the absence of any "objection to the authenticity of the copies of the original notes").  Plaintiff provided the copy of the unexecuted note that it failed to circulate to Defendants in response to their opposition to summary judgment.  (Torin Reply Aff., Ex. 2.)

[6] *Cooperatieve Centrale*, uncited by the parties, is controlling in this action.

entered into as a result of Defendants' request that Plaintiff make the two loans "subject to the terms and conditions set forth in [the respective] Secured Convertible Note of even date," and Plaintiff's condition that Defendants' guarantee the loans, each "as a principal," before Plaintiff would be "willing to make" the loans to AllianceMed and Gryphon.  (Guarantee at 1, ¶ 5.) Defendants agreed to "unconditionally and absolutely guarantee the due and punctual payment of the principal of the [n]otes, the interest thereon, and any other monies due or which may become due thereon[.]"  (*Id.* at ¶ 4.)  Therefore, under the plain terms of the agreement, Defendants provided an "unconditional[] and absolute[]" guarantee to Plaintiff of the repayment of the loans, such Guarantee being executed by Defendants for that purpose.  (*Id.* at 1, ¶¶ 3-4, 5.)

A plaintiff bringing an expedited proceeding under C.P.L.R. § 3213 is still required, however, to demonstrate that the underlying debt in fact exists.  This case, therefore, hinges on the proof presented as to the loan made by Plaintiff to Gryphon—and whether the Guarantee sufficiently encompasses that debt.  *Cf. Valley Nat. Bank v. Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 453-54 (S.D.N.Y. 2003) (once the obligation to repay the debt is established, a plaintiff "must demonstrate only that the [agreement creating that obligation] was executed by . . . Defendants, and that Defendants did not fulfill their payment obligations, in order to establish a *prima facie* entitlement to summary judgment").[7]

## II.   The Underlying Debt: $150,000 Loan to Gryphon

Plaintiff did not provide, in support of its motion, an executed copy of the underlying debt agreement—the promissory note between Plaintiff and Gryphon for the $150,000 loan.

---

[7] "The main distinction between a contract of guaranty and a contract of suretyship is that '[a] "surety" is typically jointly and severally liable with the principal obligor on an obligation to which they are both bound, while a "guarantor" typically contracts to fulfill an obligation upon the default of the principal obligor." *Valley Nat. Bank*, 254 F. Supp. 2d at 453-54 (quoting Restatement (Third) of Suretyship and Guaranty § 1, cmt. c. (1996)).  "[B]ut once a determination is made that an obligor has such a responsibility, the difference between the two types of obligatory instruments is not significant, for both involve a promise to answer for a third person's debt." *Id.*

Defendants understandably seized on this deficiency in their opposition to summary judgment. (Defs. Mem. in Opp'n to Pl. Mot. Summ. J. ("Defs. Opp'n") at 1, 7.) They contend that because the promissory note was never executed (Perez Decl. ¶¶ 3, 11),[8] "extrinsic proof" outside of the Guarantee would be required to determine what is owed, making summary judgment inappropriate. (Defs. Opp'n at 7-8); *see Channel Excavators*, 48 Misc.2d at 429 (summary judgment denied because the note was not signed; thus, determination of the action depended upon proof of facts outside of the instrument); *Zyskind v. FaceCake Marketing Technologies, Inc.*, 101 A.D.3d 550, 551 (1st Dep't 2012) ("To establish *prima facie* entitlement to summary judgment in lieu of complaint, 'a plaintiff must show the existence of a promissory note executed by the defendant containing an unequivocal and unconditional obligation to repay and the failure of the defendant to pay in accordance with the note's terms'"). Plaintiff has conceded that the note was likely never executed. (Torin Reply Aff. ¶¶ 7-9.)

There would be no question of Defendants' liability if the note was executed or if the executed Guarantee specified all of the same terms contained in the note. *See, e.g.*, *City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71 (1st Dep't 1998) ("the critical instrument for present purposes is the guaranty agreement, which is independent and by its terms stands alone in imposing direct and primary obligations for payment on the guarantor"); *Banner Indus., Inc. v. Key B.H. Associates, L.P.*, 170 A.D.2d 246, 246 (1st Dep't 1991) (plaintiff "established a *prima facie* case by proof of execution of the promissory note . . . and the guaranty"); *Royal Bank of Canada v. Mahrle*, 818 F. Supp. 60, 63 (S.D.N.Y. 1993) (note was "a valid promissory note which defendant admit[ed] he ha[d] defaulted on," entitling plaintiff to summary judgment);

---

[8] A "self-serving statement" proffered by the non-movant "is insufficient to withstand summary judgment." *Gonzalez*, 262 F. Supp. 2d at 353. Defendants "must support the assertion" that a fact "is genuinely disputed" by "showing that the materials cited do not establish the *absence* . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(B) (emphasis added).

*Torres & Leonard, P.C. v. Select Prof'l Realties, Ltd.*, 118 A.D.2d 467, 468 (1st Dep't 1986)

(summary judgment appropriate given "unconditional guarantee that money would be paid to

plaintiff in specified amounts and at specified times").

Nevertheless, several considerations negate the impact of this failing on Plaintiff's part.

Because there is no dispute as to the execution of the note—the parties agree that it was not

executed—and drawing all reasonable inferences in Defendants' favor, the lack of execution

does not create any genuine disputes of material fact as to Defendants' obligation to repay the

loan under the clear terms of the executed Guarantee.  Most critically, the Guarantee, which is

the instrument upon which this action is predicated, prohibits Defendants from asserting the

underlying debt obligations are invalid.  Moreover, Defendants neither dispute that the loan was

made, nor the terms of the loan, (*see generally* Defs. 56.1 and Perez Decl.), and the Guarantee

incorporates those terms by reference.  Finally, the Guarantee is continuing and includes all

current and future debt of the companies, making it broad enough to encompass the debt.

### a.  Guarantee Contains a Waiver of Defenses to the Underlying Debt

"Where a guaranty provides that it is 'absolute and unconditional irrespective of . . . any

lack of validity or enforceability of the agreement . . . or . . . any other circumstance which might

otherwise constitute a defense,' the guarantor is precluded from asserting a defense as to the

'existence of a valid underlying debt.'"  *136 Field Point Circle Holding Co., LLC v. Invar Intern*,

644 F. App'x 10, 12 (2d Cir. 2016) (quoting *Cooperatieve Centrale*, 25 N.Y.3d at 494-95)

(summ. order).[9]  Such language "forecloses 'affirmative defenses and counterclaims,'" *id.*

___

[9] New York cases purporting to require proof that *both* the guarantee and the promissory note are executed conflict with those allowing execution of the guarantee alone, leading this Court to the conclusion that the former category of cases concerned narrower guarantees, turned on other considerations, or were implicitly overruled by *Cooperatieve Centrale*.  *Compare Banner*, 170 A.D.2d at 246 (both instruments were executed and submitted such that court had no occasion to consider if execution was required), and *Wamco XVII Ltd. v. Chestnut Estates Development Corp.*, 251 A.D.2d 888, 889 (3d Dep't 1998) ("plaintiff must demonstrate, by means of admissible evidence, the execution of the underlying notes and guarantees"—but only "conclusory allegations as to the amount

(quoting *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 92 (1985)), which is why these provisions

are "colloquially called ironclad." *ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, --- F.

App'x ----, No. 15-3387, 2016 WL 5386293, at *1 (2d Cir. Sept. 26, 2016) (summ. order).

      The Guarantee between Defendants and Plaintiff is similarly "ironclad" and precludes

their argument that the underlying debt is invalid.  Defendants' "irrevocable," "independent,"

and "continuing" guarantee to "the punctual payment when due of any and all existing and future

indebtedness and liability" of Gryphon and AllianceMed was "unconditional[] and absolute[]"

irrespective of "whether recovery on such indebtedness or liability . . . may otherwise be or

become unenforceable," including their guarantee to each remain liable "as a principal" for the

loans "notwithstanding any act, *omission*, or thing which might otherwise operate as a legal or

equitable discharge" of their obligations.  (Guarantee at ¶ 5 (emphasis added).)

      Thus, contrary to Defendants' contention that "if the promissory note in and of itself

could not be enough . . ., a guaranty agreement[] that is entirely contingent on and subject to the

terms of that promissory note" must also be insufficient (Defs. Opp'n at 9), the provisions of the

Guarantee "effectively provide[] that, even if the principal [Gryphon] is able to escape liability,

the [Defendants'] guarantee is still enforceable." *Hyman v. Golio*, 134 A.D.3d 992, 993 (2d

Dep't 2015); *Schneider v. OG & C Corp.*, 684 F. Supp. 1269, 1272 (S.D.N.Y. 1988) ("By the

unqualified language of the guaranties given by [defendants], even if [the borrower] is able to

escape liability for the principal debt, the guaranties are still enforceable against [defendants]");

*Manufacturers Hanover Trust*, 95 A.D.2d at 737-38 (where a "guarantee provides that it 'shall

be a continuing, absolute and unconditional guarantee of payment regardless of the validity,

---

due" was provided), *with Davimos v. Halle*, 60 A.D.3d 576, 577 (1st Dep't 2009) (guarantees would extend to
alleged unsigned note and executed note, because guarantees were continuing).

regularity or enforceability of any of said [underlying] [o]bligations or purported [o]bligations'[,] by its unqualified language . . . the guarantees are still enforceable against defendant"). *But cf. Goodyear Tire & Rubber Co. v. Azzaretto*, 103 A.D.3d 880 (2d Dep't 2013) (because "guarantee by the defendant in which he agreed to pay to the plaintiff the debts incurred by [a] nonparty . . . did not state that the defendant agreed to pay to the plaintiff the debts incurred by [a *different* party], it does not qualify as a basis for summary judgment"). Defendants are, thus, barred from raising the lack of execution as a defense. *See Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 209 (1st Dep't 2007) (assertion of "affirmative defenses [] faced an insurmountable obstacle: the guaranty [] signed in connection with the [] loan [that] waived all defenses and counterclaims").

### b.  Loan Terms Were Either Incorporated Into the Guarantee or Loan Was Encompassed by the Broad and Continuous Nature of the Guarantee

Irrespective of Defendants' waiver of any flaws in the underlying debt, the lack of execution of the note does not change the nature of Defendants' guarantee of the loan's repayment for two additional reasons.  First, as conceded by Defendants, the Guarantee incorporates the terms of the promissory notes.  (Defs. Opp'n at 1 ("by [the Guarantee's] own clear an[d] unambiguous terms [it] references and adopts the terms and conditions purportedly set forth in [] underlying secured convertible promissory note[s]").)  Second, the Guarantee is continuing, broadly encompassing present and future debt.  Thus, while the failure to execute the note may be a potential defense to Gryphon, it is not fatal to Plaintiff's action under the Guarantee with respect to Defendants.

The Guarantee combines the promissory notes, the guarantee, and the security agreement into the defined term of Loan Documents, to which Defendants provided a guarantee of performance, and notably the Guarantee does not contain an integration clause.  Paragraph Four of the Guarantee requires Defendants to "[u]nconditionally and absolutely guarantee the due and

punctual payment of *the principal* of the [n]otes, *the interest thereon*, and any other monies due

or which may become due thereon, and . . . observance by [the companies] of *all of the other*

*terms, covenants, and conditions of the Loan Documents*[.]"  (Guarantee at ¶ 4.)  The "Loan

Documents" include the promissory notes for both loans—one of which was provided to

Defendants and one of which was not.  Plaintiff has alleged the terms were identical and has

provided, in unexecuted form, the promissory note for the Court's consideration.  (Torin Reply

Aff., Exs. 2 (unexecuted Gryphon Note) & 3 (executed Alliance Note).)[10]  In any event,

Defendants, by executing the Guarantee, agreed to incorporate those terms whether they were

identical or not, though they happen to be identical in this case.

    This likely explains why Defendants do not—and cannot—dispute the terms and

conditions of the loans as set out in the underlying documents explicitly incorporated by

reference into the Guarantee.  (Defs. 56.1 ¶¶ 1, 13); *see Bank of America, N.A. v. Solow*, 19

Misc.3d 1123(A), No. 601892/07, 2008 WL 1821877, at *5 (Sup. Ct. N.Y. Cty. Apr. 17, 2008)

(it did "not negate defendant's obligations" where certain underlying agreements were not

signed, since in the guarantee "defendant acknowledged that all of the transactions evidenced by

the documents took place as claimed in the documents . . . and that he guaranteed those

obligations to the extent of paying money only"), *aff'd*, 59 A.D.3d 304, 305 (1st Dep't 2009)

(even though "the obligations guaranteed were evidenced in a series of underlying mortgages

and modifications . . . the amount due was stipulated, and thus plain on the face of the

---

[10] "There is no absolute rule that in a CPLR 3213 motion, a plaintiff cannot supplement its papers in response to a defendant's arguments, so as to establish its entitlement to summary judgment in lieu of complaint." *Sea Trade Mar. Corp. v. Coutsodontis*, 111 A.D.3d 483, 486 (1st Dep't 2013); *see, e.g., European Am. Bank & Trust Co. v. Schirripa*, 108 A.D.2d 684, 684 (1st Dep't 1985) (failure to attach copies of underlying promissory notes to an unconditional guarantee was not fatal, where the guarantee and an affidavit of nonpayment were submitted); *Valley Nat. Bank v. Oxygen Unlimited, LLC*, No. 10 Civ. 5815 (GBD), 2010 WL 5422508, at *2 n.1 (S.D.N.Y. Dec. 23, 2010) (this District's rules "do not expressly forbid consideration of such materials").

document"); *Kensington House Co. v. Oram*, 293 A.D.2d 304, 305 (1st Dep't 2002) ("the language of the guaranty, obligating the guarantors to the full performance of all monetary obligations under the lease, incorporates the explicit terms of the lease"); *see also Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 55 (1953) ("signed and unsigned writings [may] be read together, provided that they clearly refer to the same subject matter or transaction").

In this way, the Guarantee is far more specific and explicit than those agreements New York courts have found facially unclear. *See, e.g.*, *Puryear v. Prokeen Management Co., Inc.*, 49 Misc.3d 1207(A), No. 504160/14, 2015 WL 5929425, at *2 (Sup. Ct. Kings Cty. Oct. 6, 2015) (where "guarantee specifically reference[d] that [plaintiff] [was] loaning [defendant] $680,000.00 which [was] evidenced by a promissory note" but made "no mention" of the other party or loan documents, it was "unclear whether [defendant] guaranteed the note that [the party] allegedly entered into or guaranteed a different debt"); *Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 444 (1996) ("the agreement speaks only of plaintiff's liabilities and obligations, contains no language of guaranty, and nowhere mentions the note"); *Hirsch v. Rifkin*, 166 A.D.2d 293, 294 (1st Dep't 1990) (defense raised to summary judgment because "instruments [had to] be viewed as interdependent" and "[p]laintiffs were concededly in breach of certain representations and warranties made in [one] agreement, which involved liabilities potentially in excess of the indebtedness under the note").

And even if the Court were to assume, again drawing all favorable inferences in favor of Defendants, that the terms of the loans were somehow unknown to them when they entered into the Guarantee, by choosing to enter into that agreement, Defendants provided a broad and sweeping "continuing" guarantee of "any and all existing and future indebtedness and liability" irrespective of "whether recovery on such indebtedness or liability . . . may otherwise be or

become unenforceable."  (Guarantee at ¶ 3.)  Therefore, the continuing nature of the Guarantee

means it encompassed the loan, and its terms, executed or not.  *See Davimos v. Halle*, 60 A.D.3d

576, 577 (1st Dep't 2009) (guarantees extended to two notes, one which was executed and one

which was not, because the guarantees were continuing); *see also Cheever v. Schall*, 33 N.Y.S.

751, 752 (2d Dep't 1895) ("the usual and ordinary conditions of farm leases," though

unmentioned, "must be presumed . . . to have been within the contemplation of the defendant

when he signed the [broad guarantee] in suit").

### c.  Amount Owed Does Not Require Proof Outside of the "Loan Documents"

Nothing more is needed to establish the amount owed—all of the necessary information

is contained within the Loan Documents, specifically the unsigned Gryphon Note.  *See Cortlandt

St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l.*, 47 Misc. 3d 544, 564-65 (Sup. Ct.

N.Y. Cty. 2014) ("This is not a case in which the amount of principal and interest owed by

the . . . Guarantor cannot be ascertained from the face of the [documents], and where 'outside

proof is needed, other than simple proof of nonpayment' to calculate the amount due."), *aff'd as

modified*, 142 A.D.3d 833 (1st Dep't 2016).

Cases where the expedited procedure was found to be inappropriate involved

unascertainable conditions or methodologies for determining the amount due that were not

apparent from the documents at issue.  *See, e.g.*, *Interman Indus. Prods. v. R.S.M. Electron

Power*, 37 N.Y.2d 151, 155 (1975) (no written instrument); *Bonds Fin., Inc. v. Kestrel Techs.,

LLC*, 48 A.D.3d 230, 231 (1st Dep't 2008) ("credit agreement outlined several default events

other than the mere failure to make payments" and plaintiffs "claim [was] based on an

acceleration clause in [the] credit agreement, thus requiring resort to an external document to

define an event of default under the note"); *HSBC Bank USA v. IPO, LLC*, 290 A.D.2d 246, 246

(1st Dep't 2002) (even given properly executed loan and guarantee, "the *prima facie* case for

such relief requires documentary evidence or an explanation of how the indebtedness is calculated, other than in the form of mere conclusory allegations"); *Matas v. Alpargatas S.A.I.C.*, 274 A.D.2d 327, 328 (1st Dep't 2000) (unascertainable "from the face of [] documents, without regard to extrinsic evidence, that plaintiffs ha[d] a right to repayment" because "the certificates of ownership of the[] 'custodial receipts' were not subscribed by [defendant], and thus did not evince that plaintiffs were registered holders of any of the securities issued by defendant"); *Beal Bank v. Melville Magnetic Resonance Imaging*, P.C., 270 A.D.2d 440, 441 (2d Dep't 2000) ("outside proof was required to determine the sum due upon the promissory note at issue in the event of default" because the instrument required something more than "defendant's explicit promise to pay a sum of money"); *Dubovsky & Sons, Inc. v. Schwartz*, 75 A.D.2d 802, 803 (2d Dep't 1980) (proof outside of the instrument was necessary to "establish[] that there [was] an existing, unsatisfied indebtedness of the principal debtor for which the defendant must answer, *i.e.*, that there actually were goods sold and delivered to the corporate debtor for which it remain[ed] liable"); *Goddard Inv'rs II, LLC v. Goddard Dev. Partners II, LLC*, No. 653907/13, 2014 N.Y. Slip. Op. 31335(U), at *4 (Sup. Ct. N.Y. Cty. May 20, 2014) (payment of note "expressly conditional on the acquisition and sale of property," proof of which was required).

"The complicated nature of the underlying transactions does not complicate the straightforward and simple promise in the guaranty itself." *Bank of America*, 2008 WL 1821877, at *5; *see UBS Commercial Mortg. Trust 2007-FL1 v. Garrison Special Opportunities Fund L.P.*, 33 Misc. 3d 1204(A), No. 652412/2010, 2011 WL 4552404, at *3 (Sup. Ct. N.Y. Cty. Mar. 8, 2011) ("A guaranty may be the proper subject of a motion for summary judgment in lieu of complaint whether or not it recites a sum certain, and the need to consult the underlying documents to establish the amount of liability does not affect the availability of CPLR 3213");

*European Am. Bank v. Lofrese*, 182 A.D.2d 67, 71 (2d Dep't 1992) ("The need to refer to the underlying promissory notes to establish the amount of liability does not affect the availability of CPLR 3213").  Reference to the Gryphon Note, which undisputedly mirrors the Alliance Note, will suffice to determine the money owed.  Defendants fail to identify any areas of ambiguity or conflict in the documents that raise material issues.

*   *   *

Accordingly, "[b]y its plain terms, in broad, sweeping and unequivocal language," the Guarantee "forecloses any challenge to the enforceability and validity of the documents which establish [Defendants'] liability for payments arising under the [] agreement[s], as well as to any other possible defense to his liability for the obligations of the [companies]." *Cooperatieve Centrale*, 25 N.Y.3d at 494.  There is no genuine dispute as to the existence of the underlying debt, or the terms contained within the promissory note incorporated into the Guarantee.

## III.  Default by Gryphon and Defendants

Usually, because a guarantee is a contract of secondary liability, a "guarantor will be required to make payment only when the primary obligor has first defaulted," *Weissman*, 88 N.Y.2d at 446 (citing *General Phoenix Corp. v. Cabot*, 300 N.Y. 87, 95 (1949)), though in this case Defendants agreed pursuant to the Guarantee to each remain liable "as a principal" for the $150,000 loan.  (Guarantee at ¶ 5).  Defendants also waived any formal demand for payment of the note.  (*Id.* (waived presentment); Perez Decl. ¶ 14 (Plaintiff demanded repayment by email).)  Nevertheless, since they do not dispute Plaintiff's affidavit indicating that the loan remains unpaid and in default (Pl. 56.1 ¶¶ 3-4), any distinction on these points is irrelevant other than to indicate the degree to which Defendants agreed to repay the debt.  *Compare Bank of America*, 59 A.D.3d at 304-05 (since "guaranty was absolute and unconditional, expressly waived demand or

18

presentment and was expressly made a primary obligation of the defendant, . . . no formal demand, beyond the motion in lieu of complaint itself, was necessary to state a cause of action on the guaranty"), *with Cavendish Traders*, 117 F. Supp. 2d at 403 (one defendant avoided summary judgment given allegation that discovery was needed because the other defendants had "repeatedly told" him that "the debt was paid").  There is no genuine dispute as to Defendants default under the Guarantee.

*   *   *

Therefore, summary judgment is appropriate on Plaintiff's claim for the amount due under the terms of the loan made to Gryphon as guaranteed by Defendants.  (Guarantee at ¶¶ 3-5, 8, 9; Gryphon Note.)  The Guarantee obligates Defendants to repay the $150,000 loan, the terms of which are referenced in the Guarantee and provided in the Gryphon Note submitted by Plaintiff.  Defendants have failed to demonstrate the existence of a material fact in dispute, or that "extrinsic proof" would be required to determine the amount due under the Guarantee for the underlying debt set forth in the Gryphon Note, entitling Plaintiff to judgment as a matter of law. Plaintiff has submitted affidavits supporting that the loan is still owed to it, and Defendants have made no showing to the contrary.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED. Plaintiff is entitled to a judgment against Defendants, jointly and severally, of $150,000 together with accrued interest, in accordance with the terms of the loan, and attorneys' fees and costs in accordance with the terms of the Guarantee.  Plaintiff is to provide the Court within thirty (30) days a proposed order of judgment detailing attorneys' fees and collection costs, pursuant to Fed. R. Civ. P. 54(d)(2) and Local Civil Rule 54.1, and interest owed on the delinquent principal.

19

Defendants will be permitted to file a brief opposition attaching all necessary information in support of any contested sums within thirty (30) days of Plaintiff's submission. The Court respectfully directs the Clerk to terminate the motion at ECF No. 5.

Dated:    November 10, 2016                          SO ORDERED:
          White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge